IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| SHONDA TIPPEN § § § VS. § § § FREESTONE COUNTY, TEXAS § | CIVIL NO. 6:21-cv-1339 <br><br> JURY DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I.   INTRODUCTION

1.   Plaintiff Shonda Tippen brings this action for damages against her former employer Freestone County, Texas for violations of the Americans with Disabilities Act and the Family and Medical Leave Act as follows.

### II.   JURISDICTION AND PARTIES

2.   Jurisdiction of this Court is invoked pursuant to Section 107(a) of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. § 12117, which incorporates by reference § 706 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5, providing for relief against discrimination on the basis of disability in employment. Additionally, Plaintiff alleges violations of the Family and Medical Leave Act, 29 U.S.C. sec. 2601, et seq.

3.   All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5(f)(3), have occurred or been complied with:

(a)   a charge of employment discrimination on the basis of disability was filed with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practice alleged herein.

(b)   A Notification of Right to Sue was received from the Department of Justice Civil Rights Division on or about October 14, 2021.

(c)   This Complaint has been filed within 90 days of receipt of the DOJ's Notification of Right to Sue.

4. Plaintiff, Shonda Tippen, is a citizen of the United States and the State of Texas who resides in Freestone County, Texas.

5. All of the discriminatory employment practices alleged herein were committed within the Western District of Texas.

6. Defendant, Freestone County, Texas is a Texas County located within the Western District of Texas – Waco Division and may be served by delivering this complaint and summons to its County Judge Linda Grant at 118 East Commerce Street, Rm. 205, Fairfield, Texas 75840.

7. Freestone County is a "covered entity" within the meaning of § 101(2) of the ADA, 42 U.S.C. § 12111(2).

8. Freestone County, Texas employs 15 or more employees and is an "employer" within the meaning of Section 101(5)(A) of the ADA, 42 U.S.C. § 12111(5)(A).

9. Freestone County, Texas employs 50 or more employees and is an "employer" within the meaning of 29 USC § 2611(4)(A) of the Family Medical Leave Act (FMLA).

## II.   STATEMENT OF FACTS

10. Plaintiff was employed by Freestone County Justice of the Peace Precinct 2 as a court clerk from October 29, 2008, until she was terminated on September 30, 2020. Plaintiff broke her ankle in the course and scope of her employment in December 2009 and had to have surgery which was all covered under workers compensation. Plaintiff was off work for approximately four months but returned to her duties with the court. Since that time, Plaintiff has had various problems with her ankle, but was able to perform all of her work duties assisting the judge.

11. On May 26, 2020, Plaintiff's supervisor (Judge Debra L. Hamilton) was leaving work and fell in the same location of my original injury back in 2009. Plaintiff was present at the time of her falling and in her attempt to assist her, Plaintiff re-injured her left ankle. Due to her injuries and the need to render immediate medical assistance, Plaintiff was unaware of her own

injuries until she tried to stand up.

12. Plaintiff attempted to make an appointment to see the doctor regarding her ankle but was not able to be seen until June 2, 2020. Despite the excruciating pain and swelling, Plaintiff reported to work on May 27, 2020. The morning of May 28, 2020, Plaintiff could not bear weight on her ankle due to pain and swelling, she immediately contacted her supervisor to inform her she was physically unable to come in that day due to the issues she was having with her ankle. Plaintiff also informed her supervisor that she would be scheduling an appointment to get it checked out and would keep her posted.

13. On May 29, 2020, Plaintiff spoke with her supervisor again to inform her that the earliest she could be seen by the doctor was June 2, 2020. Plaintiff advised her supervisor that due to her inability to walk that she would not be able to work until she could see the doctor. Plaintiff's supervisor stated she was okay with that and asked that she be sure to follow-up with the doctor.

14. On June 2, 2020, Plaintiff was seen by a company workers compensation doctor for re- injuring her left ankle. Plaintiff was advised that she needed to see a specialist and it was recommended that she should refrain from weight bearing until seeing the specialist. The treating doctor (Dr. Dauder) put Plaintiff on restrictions and took me off work from June 2, 2020, until June 18, 2020.

15. After the doctor's appointment Plaintiff contacted her supervisor to inform her of all the events/conversations that took place during the doctor's visit. Plaintiff's supervisor immediately responded "those arrangements will not work for me… I will need to find someone else." She also questioned "why didn't you go to the doctor on June 1, 2020 and pay out of pocket instead of waiting to go on June 2, 2020" She further stated "regardless what the doctor said, I could still come to work" She went on to ask other questions related to the type of doctor Plaintiff saw and the future plans for her treatment.

16. On June 4, 2020, Judge Hamilton called her several times. When Plaintiff finally spoke with her, she approached her in a hostile and attacking manner asking, "what's going on with you?", she also stated "this is not working for me." She went on to state "I am going to have to get somebody else to replace you, but we will discuss that more when you return to work." She continued with other verbiage and then hung up the phone. Plaintiff sent an email to Judge Hamilton recapping the phone conversation and expressing how emotionally disturbing it was and asking for clarity. She never responded.

17. Plaintiff was contacted by the doctor with an earlier appointment scheduled for June 15, 2020. At that appointment, Plaintiff was examined, x-rays were taken and after consulting the doctors placed her on strict duties of non-weight bearing from June 22, 2020 until July 27, 2020. Plaintiff emailed Judge Hamilton to inform her of her return date and restrictions, but she did not respond.

18. On June 19, 2020 Judge Hamilton called Plaintiff to inform her that she had changed her working hours from 8-4 to 8-5. Plaintiff's concern with the change of hours is that all of the JP offices close at 4 p.m. and she would be alone in the office until 5 p.m. and there would be no business conducted. Plaintiff contends that Judge Hamilton made this change simply to target her and make things uncomfortable based on her previous statements.

19. On June 22, 2020, Plaintiff reported to work under the light duty recommendations of her doctor; however, those accommodations were denied by Judge Hamilton. She made no attempt to honor Plaintiff's medical restrictions. Plaintiff returned to work on June 23, 2020 and again on June 24, 2020 and still no accommodations were provided to Plaintiff.

20. On June 24, 2020, the pain had become so overwhelming Plaintiff took off the afternoon advising Judge Hamilton of the excruciating pain she was experiencing. Plaintiff stated that she needed to immediately follow-up with her doctor and the judge simply stated "okay".

Plaintiff called the doctor on June 24, 2020 but was not able to be seen until June 30, 2020. Plaintiff informed Judge Hamilton of the next available appointment and that she would be unable to come to work until she was seen by the doctor.

21. On June 30, 2020 Plaintiff's doctor determined that she must stay off her ankle to provide some healing time. She took Plaintiff off work again from June 30, 2020 until July 30, 2020 with a follow to determine the next plan of action. Plaintiff contacted Judge Hamilton after her appointment updating her and she again was extremely hostile and annoyed and stated "Shonda, why don't you just...", "are you having surgery?" "I don't know what to tell you."

22. On July 1, 2020, Plaintiff was contacted by the County Treasurer's office and informed that she was being placed on FMLA leave. Plaintiff did not apply for this and was not sure exactly how it worked, and nothing was explained to her.

23. On July 28, 2020 Plaintiff attended her doctor's appointment. After the appointment Plaintiff emailed Judge Hamilton and the treasurer's office attaching the paperwork from the doctor's office.

24. On August 21, 2020 Plaintiff emailed the treasurer's office and Judge Hamilton regarding the FMLA leave that she was placed on. Plaintiff understood that the FMLA was set to expire on August 24, 2020. At that time, Plaintiff was unable to work due to still being treated and temporarily off work under the treating doctor. Plaintiff was receiving physical therapy and trying very hard to heal so that she could return to her job that she had been committed to and valued for over 12 years.

25. On September 8, 2020 Plaintiff had a doctor's appointment with Dr. Grosser. The doctor released Plaintiff to return back to work on September 23, 2020 with restrictions. Plaintiff emailed Judge Hamilton and the treasurer's office the paperwork from the doctor's office and that she would be returning back to work on September 23, 2020.

26. On September 18, 2020, Plaintiff received a certified letter from Judge Hamilton stating that her full-time position has been filled by another individual and there was only a part-time position available for her. Plaintiff was given a deadline of September 21, 2020 to accept the part time position.

27. On September 21, 2020 Plaintiff sent an email to Judge Hamilton and the treasurer's office that she would like to go on record that she had been a full-time employee for over 12 years and had only been off work due to a work-related injury. Plaintiff wanted to know the process to appeal the decision to place her in a parttime position.

28. On September 23, 2020 Plaintiff returned back to work. She was told by Judge Hamilton that she needed to stay home and only return to work once the doctor have completely released her and 100% healed without any restrictions and no physical therapy and refused to allow Plaintiff to work.

29. On September 23, 2020 and September 29, 2020 Plaintiff sent two emails to Judge Hamilton and the Treasurer's office just as a follow up of the conversation with Judge Hamilton on September 23, 2020.

30. On September 30, 2020 Plaintiff received a certified letter from Judge Hamilton to inform her that her employment with Freestone County, Precinct 2 had been terminated.

### III.    CLAIMS FOR RELIEF

### (A) AMERICANS WITH DISABILITIES ACT

31. The allegations contained in Paragraphs 1 through 30 are hereby incorporated by reference.

32. As a result of her medical conditions described herein, Plaintiff has been an individual with a "disability" within the meaning of Section 3(2) of the Americans with Disabilities Act, 42 U.S.C. § 12102(2).  More particularly, Plaintiff has impairments that substantially limits one or more

of her major life activities, has a record of such an impairment, and was regarded by Freestone County, Texas as having such an impairment.

33. Plaintiff is a "qualified individual with a disability" as that term is defined in § 101(8) of the ADA, 42 U.S.C. § 12111(8). More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of her job as a court clerk for Freestone County, Texas.

34. The effect of these unlawful practices has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect her employment status as an individual with a disability within the meaning of the ADA. Based upon the stated allegations, Plaintiff asserts four claims under the ADA: (1) Disparate treatment based upon Defendant's termination of Plaintiff based upon qualification standards and other criteria that screened her out as an individual with disabilities; (2) Disparate impact based upon the Fitness-for-Duty program which had an adverse impact on Plaintiff as an individual with disabilities by screening Plaintiff from employment by reason of her various diagnoses; (3) Unlawful medical inquiry – alleging violation of 42 U.S.C. §12112(d)(4)(A), which provides that an employer "shall not require a medical examination an shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity;" and (4) failure to make reasonable accommodation to Plaintiff's disabilities, which constitutes discrimination against Plaintiff with respect to terms, conditions, or privileges of employment in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A). In connection with Plaintiff's accommodation claim, Freestone County, Texas failed to undertake any good faith efforts, in consultation with Plaintiff, to identify and make a reasonable accommodation with Plaintiff.

### (B) FAMILY AND MEDICAL LEAVE ACT

35. The allegations contained in Paragraphs 1 through 34 are hereby incorporated by reference.

36. The Family and Medical Leave Act contains two distinct provisions: (1) an entitlement clause and (2) an anti-discrimination clause. See 29 U.S.C. §§ 2612, 2615. The entitlement clause provides a series of entitlements which give certain rights to employees such as the right to have their job back once they return from a qualified leave. This FMLA also contains provisions prevent an employer from retaliating against an employee for taking FMLA leave. See 29 U.S.C. §2615(a) and 29 U.S.C. §2615(b). Defendant is in willful violation of the FMLA. Defendant violated 29 U.S.C. §2612, §2614 and 29 U.S.C. §2615(a) and 29 U.S.C. §2615(b).

37. Plaintiff availed herself of a protected right under the FMLA and was subsequently terminated. There is a causal connection between the Plaintiff's protected activity and Defendant's decision to terminate Plaintiff. Plaintiff's taking of FMLA was a motivating factor in the decision to terminate, and as such was a cause of Plaintiff's damages, as set forth below.

38. In addition, an employee who takes FMLA leave under section 2612 shall be entitled, on return from such leave, to be restored by the employer to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. See 29 U.S.C. §2614(a)(1). Furthermore, the taking of FMLA leave under section 2612 shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced. See 29 U.S.C. §2614(a)(2). Defendant violated these provisions of the FMLA by terminating Plaintiff while she was on FMLA.

### IV. ACTUAL DAMAGES

39. As a direct and proximate result of Freestone County, Texas ' discrimination on the basis of disability and violation of the ADA, Plaintiff has suffered lost wages and benefits and lost

employment opportunities.

40. Defendant's failure to make reasonable accommodation to Plaintiff has caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

41. Defendant intentionally inflicted extreme emotional distress upon Plaintiff by intentionally discharging Plaintiff on the basis of her disability. Plaintiff has suffered extreme emotional distress, embarrassment, severe disappointment, indignation, shame, despair, and public humiliation due to Defendant's discharge of Plaintiff.

42. The unlawful employment practices complained of above were willful within the meaning of Section 706(g)(1) of Title VII, 42 U.S.C. § 2000e-5(g)(1), as incorporated by Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

## V. PUNITIVE DAMAGES

43. The conduct committed by Defendants against Plaintiff is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiff. Therefore, Plaintiff additionally brings suit for punitive damages.

## VI. LIQUIDATED DAMAGES

44. Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff further seeks liquidated damages in an amount equal to wages, salary, employment benefits, or other compensation lost by Plaintiff.

## VII. ATTORNEYS' FEES AND EXPERT FEES

45. A prevailing party may recover reasonable attorneys' and experts' fees. Plaintiff seeks all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Plaintiff additionally brings suit for attorney's fees, expert fees, and other costs pursuant to 29 U.S.C. §2617(a)(3).

## VIII. JURY DEMAND

46. Plaintiff demands trial by jury.

## IX. RELIEF REQUESTED

47. Plaintiff requests the judgment of this Court against Defendant, Freestone County, Texas as follows:

(a) Find and hold that Plaintiff has suffered from Defendant's acts of discrimination on the basis of her disability;

(b) Order that Plaintiff be awarded the back pay she would have earned, with related monetary benefits and interest thereon, had he been reinstated to her position;

(c) Award Plaintiff compensatory damages in an amount to be determined at trial of this matter;

(d) Requiring Defendant pay to Plaintiff damages for mental distress imposed upon Plaintiff through and as a result of the aforementioned discriminatory acts;

(e) Award Plaintiff liquidated damages pursuant to the FMLA;

(f) Award Plaintiff attorney fees and expert fees, including litigation expenses, and the cost of this action; and

(g) Grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
bhommel@hommelfirm.com
HOMMEL LAW FIRM
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
(903) 596-7100 Telephone/Facsimile

ATTORNEY FOR PLAINTIFF